Jacob MEHLHOFF, Plaintiff and Respondent,

v.

PIONEER STATE BANK, a corporation, and M. T. Thompson, its President, Defendants and Appellants,

and

John Geigla, Sheriff of McHenry County, North Dakota, Defendant.

No. 8062.

Supreme Court of North Dakota.

Oct. 9, 1963.

Rehearing Denied Nov. 7, 1963.

Drey & Schwartz, Garrison, for plaintiff and respondent.

Ilvedson, Pringle, Herigstad & Meschke, Minot, attorneys for defendants and appellants.

MORRIS, Chief Justice.

This appeal involves rights of redemption of real estate under the provisions of Chapter 28–24, NDCC. The Pioneer State Bank, a corporation, and M. T. Thompson, its president, appeal from a judgment quieting title in the plaintiff as to any claim of the defendants to certain lands in McHenry County, decreeing cancellation and declaring void a note dated April 5, 1960, given by Roy Lakoduk to Sam Lakoduk, and allowing a reduction in indebtedness of Roy Lakoduk to the appellant Bank.

The controversy grew out of a transaction in November 1951, wherein Ed Lakoduk obtained a loan from the Pioneer State Bank of $25,000, which sum was credited by the Bank to his account.

In order that the loan might be made acceptable to the Bank, Ed Lakoduk prevailed upon his father, Sam Lakoduk, to enter the transaction by augmenting the security for the proposed loan by Sam Lakoduk's note and mortgage on lands owned by the father. Pursuant to the arrangement between Ed Lakoduk, Sam Lakoduk and the Bank, the following mortgages were executed.

On November 7, 1951, Ed Lakoduk gave a mortgage to the Pioneer State Bank for $10,000, on 1,760 acres of land in McHenry County. On the same day his father, Sam Lakoduk, executed a mortgage in favor of the Bank for $10,000, on land that Sam Lakoduk owned in McHenry County. The money from both mortgages was credited to Ed's bank account. Neither was paid when due, and on April 7, 1954, both were renewed by new mortgages. In the case of Ed Lakoduk, the renewal took the form of two mortgages, identified as exhibits A and B. On June 30, 1955, Ed Lakoduk executed another mortgage to the Bank for an additional loan. This instrument is identified as exhibit C. As a part of the renewal transaction, on April 7, 1954, Ed Lakoduk executed a mortgage in favor of Sam Lakoduk for $10,000, covering the same 1,760 acres described in the mortgages

of Ed Lakoduk to the Bank. It was recorded in the office of the register of deeds of McHenry County on April 12, 1954, at 10:55 A.M., and is exhibit O. This mortgage was assigned by Sam Lakoduk to the Pioneer State Bank the day after its execution, April 8, 1954, as collateral security for Sam Lakoduk's $10,000 note and mortgage to the Bank.

The mortgages pertinent to the issues given by Ed Lakoduk we tabulate, in the order of their priority, as follows:

Exhibit A, dated April 7, 1954, to Pioneer State Bank, $3,750, recorded April 12, 1954, 10:50 A.M.

Exhibit O, dated April 7, 1954, to Sam Lakoduk, $10,000, recorded April 12, 1954, 10:55 A.M.

Exhibit B, dated April 7, 1954, to Pioneer State Bank, $9,539.71, recorded April 12, 1954, 11 A.M.

Exhibit C, dated June 30, 1955, to Pioneer State Bank, $2,740, recorded July 12, 1955, 9:40 A.M.

The Sam Lakoduk mortgage was foreclosed by the Bank in 1958. The Bank was the purchaser at the foreclosure sale and became the grantee in a sheriff's deed to the Sam Lakoduk land on November 27, 1959.

In 1960, mortgages A, B, and C above listed were foreclosed in one action by the Bank on the 1,760 acres of land of Ed Lakoduk. A separate sale was had under each mortgage. The Bank became the purchaser at the sales. Exhibit O, being the mortgage from Ed Lakoduk to Sam Lakoduk which had been assigned to the Bank, remained unforeclosed and unsatisfied. On April 5, 1960, after the foreclosure sales under mortgages A, B, and C, the Bank released to Sam Lakobuk its assignment of mortgage O, thereby releasing any claim to that mortgage as collateral. The release is Exhibit D, and was recorded April 5, 1960.

On April 5, 1960, Roy Lakoduk, a son of Sam Lakoduk, purchased his father's land from the Pioneer State Bank. Most of the purchase price was obtained through a loan from an insurance company. The balance $2,540.40, still owing to the Bank, was secured by a promissory note dated April 5, 1960, signed by Roy, payable to Sam Lakoduk and endorsed by the payee to the Bank. Sam Lakoduk secured payment of this note by reassigning mortgage exhibit O to the Bank on April 5, 1960. On the same day this assignment was recorded in the office of the register of deeds.

The plaintiff, Jacob Mehlhoff, the assignee of a judgment that had been entered against Ed Lakoduk on August 8, 1955, redeemed the 1,760 acres of Ed Lakoduk land that had been foreclosed upon in the proceedings involving mortgages A, B, and C. At the time of the redemption the Bank held three certificates of sale issued on the foreclosure of the three mortgages. The certificates show that the sales were held on February 18, 1960. On February 16, 1961, the sheriff of McHenry County issued to Jacob Mehlhoff a certificate of redemption from the sales on the foreclosures of mortgages A, B, and C. Mehlhoff did not tender, as a part of the redemption, payment of the mortgage exhibit O. We note here that at the time of the redemption mortgage O had been reassigned by Sam Lakoduk to the Bank as collateral security for Roy Lakoduk's note of $2,540.40, payable to Sam Lakoduk on demand, and which Sam had endorsed to the Bank.

On March 25, 1961, the Pioneer State Bank, as assignee of mortgage O which had been reassigned to the Bank by the mortgagee Sam Lakoduk on April 5, 1960, made a redemption from the redemption of Jacob Mehlhoff pursuant to which the sheriff of McHenry County issued to the Bank a certificate of redemption dated March 25, 1961. On June 26, 1961, no further redemption having been made, a sheriff's deed was issued to the land described in the mort-

gage exhibit O and in the judgment appealed from, which description is:

E½SW¼, Lots 6 and 7 of Section 6; NE¼, E½NW¼ and Lots 1 and 2 of Section 7;
SW¼, SE¼, NW¼ and W½NE¼ of Section 32;
S½ SW¼ of Section 29; E½ NW¼, Lots 1 and 2 of Section 18, All in Township 151 North of Range 78 West;
E½SE¼ of Section 1;
NE¼NE¼ and S½SE¼ of Section 12;
NE¼SE¼, SE¼NW¼, NE¼NW¼, and NE¼ of Section 13,
All in Township 151 North of Range 79 West;
All of the above land in McHenry County, North Dakota, containing 1,760 acres.

The trial court found that the redemption proceedings instituted by the Bank were void and ordered that the sheriff's deed to the Bank be set aside and that title be quieted in the plaintiff, Mehlhoff.

■ Section 28–24–01, NDCC, sets out who may be entitled to redeem, and provides that "A creditor having a lien by judgment, mortgage, or otherwise on the property sold, or on some share or part thereof, subsequent to that on which the property was sold" may redeem and is termed a redemptioner. In order to be a redemptioner, a person must be a creditor of the mortgagor who has a lien on the property sought to be redeemed subsequent to the lien on which the property was sold. The Bank does not challenge the validity of Mehlhoff's redemption from the foreclosure sales of its mortgages A, B, and C, but insists that it had the right as assignee of mortgage O to redeem from the plaintiff as redemptioner. Whether it had that right depends on whether it is a creditor having a lien on the property it seeks to redeem subsequent to that on which the property was sold.

■ There can be no question but that Sam Lakoduk is such a creditor as to the sale under mortgage A. The question then is whether the pledge to the Bank of Ed Lakoduk's note and the assignment of the mortgage securing it constitute the Bank a creditor of Ed Lakoduk. An approved definition of a creditor is "He who has a right to require the fulfillment of an obligation or contract." 1 Bouvier's Law Dictionary, Rawle's Third Revision, page 726; Commerce Trust Co. v. Farmers' Exchange Bank, 332 Mo. 979, 61 S.W.2d 928, 89 A.L.R. 373; Richards-Conover Hardware Co. v. Sharp, 150 Kan. 506, 95 P.2d 360. A similar definition appears in Black's Law Dictionary, Fourth Edition.

■ When the Bank became the pledgee of Ed Lakoduk's note, it had the right to enforce payment of the note without seeking to enforce its principal obligation against Sam Lakoduk, the pledgor. 72 C.J.S. Pledges § 75; 41 Am.Jur., Pledge and Collateral Security, Section 71; Medler v. Childers, 17 N.M. 530, 131 P. 490.

■ Not only was Ed Lakoduk's note pledged to the Bank as security for the payment of Sam Lakoduk's note to the Bank, but the mortgage securing the former note was also assigned to the Bank as collateral security. The assignment of the mortgage gave to the Bank a limited ownership in the mortgage commensurate with the assignor's liability to the Bank that was secured by the collateral. 6 C.J.S. Assignments § 93.

"The assignment of a debt ordinarily carries with it all liens and every remedy or security that is incidental to the subject matter of the assignment and that could have been used, or made available, by the assignor as a means of indemnity or payment, even though they are not specifically named in the instrument of assignment, and even though the assignee at the time was ignorant of their existence." 6 Am.Jur. 2d, Assignments, Section 121.

When we take into consideration the rights that passed to the Bank through the pledge of the note and the assignment to it of the

mortgage, we reach the conclusion that the Bank is a creditor having a lien on the property sold upon the foreclosure of mortgage A subsequent to that mortgage and therefore is a redemptioner under the provisions of Chapter 28–24, NDCC.

■ Mortgage O was a lien superior to mortgages B and C. When Mehlhoff redeemed from the sales held pursuant to the foreclosures of B and C, his rights thus acquired were subject to mortgage O. When the Bank, by virtue of its assignment of mortgage O, redeemed from Mehlhoff as redemptioner from the foreclosure of mortgage A, the Bank's rights acquired by that redemption were superior to any rights acquired by Mehlhoff, and upon the expiration of 60 days from the Bank's redemption, equitable title passed to the Bank and Mehlhoff's rights were extinguished. The issuance of a sheriff's deed to the Bank was but a ministerial act of the sheriff which completed the formal transfer of the legal title. Sections 28–24–04 and 28–24–13, NDCC. Petters v. Charlson Estate, 69 N.D. 290, 285 N.W. 510; Stevahn v. Meidinger, 79 N.D. 323, 57 N.W.2d 1. The trial court erred in quieting title in Mehlhoff as against the Bank and in setting aside the sheriff's deed of June 26, 1961, conveying the premises to the Pioneer State Bank.

The trial court also decreed the note dated April 26, 1960, for $2,540.40, payable on demand to Sam Lakoduk, and by him pledged and endorsed to the Pioneer State Bank, to be null and void and directed that Roy Lakoduk's indebtedness to the Bank be reduced by the amount of the note and by an additional $500. Neither Roy Lakoduk nor Sam Lakoduk was a party to this action. The court not only went beyond the issues in this case, but went beyond its powers in attempting to determine property rights of parties over which it had no jurisdiction.

■ It is the long established rule that one seeking to quiet title must recover if at all upon the strength of his own title and not upon the weakness of his adversary's title. Among our recent cases supporting this rule are Robertson v. Brown, 75 N.D. 109, 25 N.W.2d 781; Star v. Norsteby, 75 N.D. 563, 30 N.W.2d 718; Shuck v. Shuck, 77 N.D. 628, 44 N.W.2d 767; Sailer v. Mercer County, 77 N.D. 698, 45 N.W.2d 206, 22 A.L.R.2d 988; Hogue v. Bourgois, N.D., 71 N.W.2d 47, 54 A.L.R.2d 633. The plaintiff in this case has wholly failed to establish any title to the property in question.

The judgment appealed from is reversed and the case remanded to the district court for entry of judgment decreeing the sheriff's deed, executed by the sheriff of McHenry County on June 26, 1961, conveying the property therein described to the Pioneer State Bank, to be as against the claims of the plaintiff Mehlhoff a valid conveyance.

STRUTZ, BURKE and ERICKSTAD, JJ., concur.

TEIGEN, Judge (concurring specially).

I concur in the opinion of the court but believe it should be pointed out that this case does not adjudicate the status of the defendant's title as to other interested persons who are not parties to this action.

On Petition for Rehearing.

MORRIS, Chief Justice.

■ The respondent has filed a petition for rehearing in which it is asserted that after the foreclosure of mortgage A, which was the foreclosure from which Mehlhoff redeemed and the Bank later redeemed from Mehlhoff, mortgage O was void because of the foreclosure of the prior mortgage held by the Bank and that mortgage O at the time of the redemption from Mehlhoff afforded no support for that redemption. 37 Am.Jur., Mortgages, Section 537, is cited, which states the general rule to be that foreclosure of a senior mortgage by one holding a junior mortgage on the same premises by a suit in which no attempt is made to foreclose or preserve the junior

lien extinguishes that lien. Assuming that such a rule would be applicable in North Dakota, and that it would affect the right of redemption under our redemption statutes, the facts in this case are such that the rule would not apply in any event.

Mortgage O was assigned by Sam Lakoduk to the Bank as a pledge of collateral security. The same debt was also secured by a real estate mortgage given by Sam and his wife to the Bank. That mortgage was foreclosed in 1958. Sheriff's deed was issued conveying the Sam Lakoduk land to the Bank in 1959. The debt of Sam Lakoduk to the Bank was satisfied by the foreclosure and Sam was entitled to a return of his pledge security, mortgage O. The foreclosure on the Ed Lakoduk land involved in this action and from which Mehlhoff redeemed took place in 1960. Sam Lakoduk was not a party to that foreclosure. At that time the Bank had no interest in mortgage O, because Sam's debt to the Bank for which the pledge was made had been satisfied. After the foreclosure of mortgage A, and before the expiration of the period of redemption, Sam again pledged mortgage O to the Bank as collateral security for a new debt. The Bank, as pledgee under the new pledge, having an interest in its collateral security, and having a duty to protect the interest of the pledgor which is in the nature of a trust, made the redemption of which the respondent complains. 72 C.J.S. Pledges § 78; Jones on Collateral Securities and Pledges, Third Edition, Section 393. It is clear to us that under the facts in this case the rule for which the respondent contends has no application.

■ We would further point out that our redemption statutes are remedial in nature and are intended not only for the benefit of creditors holding liens subsequent to the lien being foreclosed, but are also for the purpose of making the property of the debtor pay as many of his debts as it can be made to pay and to prevent its sacrifice. To that end redemptions are to be encouraged. North Dakota Horse & Cattle Company v. Serumgard, 17 N.D. 466, 117 N.W. 453, 29 L.R.A.,N.S., 508, 138 Am.St.Rep. 717; Fox v. Nelson, 30 N.D. 589, 153 N.W. 395; McGee v. Marshall, 54 N.D. 584, 210 N.W. 521. Rehearing denied.

STRUTZ, TEIGEN, BURKE and ERICKSTAD, JJ., concur.